Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR15-202JCC |
| Plaintiff, | |
| | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| GUSTAVO GARCIA-VALENCIA, | |
| Defendant. | Sentencing Date: March 7, 2017 |

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Steven T. Masada and Grady J. Leupold, Assistant United States Attorneys for said District, files this Memorandum in anticipation of the sentencing hearing in the aforementioned matter.

## I.  INTRODUCTION

The defendant, Gustavo Garcia-Valencia, appears for sentencing following his guilty pleas to felony counts of Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 841(a) and 846, and Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g).  For the reasons set forth below, the United States respectfully recommends that the Court

United States' Sentencing Memorandum
*U.S. v. Garcia-Valencia*; CR15-202JCC - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  impose a term of imprisonment of ***66 months***, followed by three (3) years of supervised
2  release.  The U.S. Probation Office recommends a custodial term of 60 months.

## II.  BACKGROUND

**A.  Offense Conduct**

The revised Presentence Report ("PSR") prepared by the Probation Office, dated February 21, 2017, and the parties' Plea Agreement (Dkt. #295), provide an accurate overview of the offense conduct of the defendant, Gustavo Garcia-Valencia, a/k/a "Guero."  PSR ¶¶ 12-16.  In short, Garcia-Valencia participated in the distribution of illegal drugs for an active drug trafficking operation operating in California, Washington State, and elsewhere, and, in doing so, illegally possessed two firearms as well as an illegal silencer.

Over the course of this investigation, investigators infiltrated a Washington drug distribution network, led by co-defendant Enrique Aguilar Valencia ("Aguilar"), a California resident, through the use of a confidential source assisting law enforcement ("CS").  Among other techniques employed, investigators were able to conduct six recorded controlled buys (methamphetamine and heroin) and recorded multiple additional meetings and conversations.  The drug organization was moving significant quantities of drugs into Washington for sale and for distribution elsewhere, to include Eastern Washington and Canada.  The defendant, Garcia-Valencia, served as a redistributor for the same DTO as Aguilar.

For example, in furtherance of the conspiracy, on May 6, 2015, Garcia-Valencia twice met with Aguilar and acquired samples of heroin.  More specifically, Aguilar, accompanied by the CS, met Garcia-Valencia in a Walmart parking lot and provided the defendant with a sample of heroin.  Later, Aguilar received a phone call and then told the CS that "Guero" (Garcia-Valencia) did not like the sample and wanted another one.  Aguilar and the CS then returned to an identified stash location, 1915 E. Viewmont Drive, Mount Vernon, Washington, where Aguilar and co-defendant Efren Villalobos-Gonzalez prepared another heroin sample.  Aguilar, accompanied by the CS (and as

United States' Sentencing Memorandum
*U.S. v. Garcia-Valencia*; CR15-202JCC - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  observed by surveillance), then met Garcia-Valencia on the roadside in Marysville,

2  Washington.  During the meeting, which was audio recorded, Aguilar provided Garcia-

3  Valencia with the second sample, and the two discuss the quality and price of pure

4  heroin.

5       On May 8, 2015, as observed by surveillance (and corroborated by the CS and

6  GPS tracker data on Aguilar's vehicle), Aguilar went to a local motel and picked up a

7  load car driven by a courier from Southern California.  Aguilar then drove the load car

8  back to his stash location, 1915 E. Viewmont Drive, Mount Vernon, Washington, where

9  he and the CS met with the defendant, Garcia-Valencia, and his associate.  There, Garcia-

10  Valencia and Aguilar accessed a hidden compartment in the car's backseat, from which

11  they removed a drug load and into which they placed bags believed to contain drug cash

12  proceeds.  Aguilar later returned the load vehicle to the motel, after which the courier

13  returned to California.

14       According to records subsequently obtained by investigators, this courier had

15  made dozens of similarly suspicious short trips to various states over the past year or so.

16  According to toll records for subsequently seized cell phones, Garcia-Valencia had prior

17  communications directly with this courier as well.

18       On June 30, 2015, investigators conducted multiple arrests and searches of

19  numerous locations and vehicles in Washington and California.  In total, they seized an

20  immense amount of drugs (roughly 13,878.3 grams of methamphetamine, 2,768.5 grams

21  of heroin, and 46.3 grams of cocaine), cash ($42,183.71), trafficking paraphernalia, and

22  numerous firearms, ammunition, and accessories.

23       Garcia-Valencia's residence, located at 18808 SR 530 NE, Arlington, Washington,

24  was among the residences searched.  Investigators arrested Garcia-Valencia and located

25  packaging material, wire transfer receipts, and numerous cell phones, including the

26  device used to communicate with Aguilar and the aforementioned courier.  Investigators

27  also recovered two firearms, namely, an Izhmash, IZH-70, .380 ACP handgun (serial

28  number: BAC1642), with an illegal silencer, from the master bedroom, and an Izhmash,

United States' Sentencing Memorandum
*U.S. v. Garcia-Valencia*; CR15-202JCC - 3

1   IJ70-18AH, 9mm Makarov handgun (importer serial number: RT02342), with a flash
2   suppressor, from the laundry room; ammunition; and a holster.

3          Both firearms had been shipped and transported between a foreign nation and the
4   United States.  In light of Garcia-Valencia's prior felony drug conviction (Possession of
5   Controlled Substance (cocaine), in San Mateo County Superior Court, California), he was
6   prohibited from possessing such weapons.  Furthermore, his possession of the silencer
7   was also illegal.

8   **B.    Procedural History**

9          On June 24, 2015, a Grand Jury charged the defendant, along with multiple co-
10  defendants, with Conspiracy to Distribute Controlled Substances, subject to the 21 U.S.C.
11  § 841(b)(1)(A) penalty provision based on the type and quantity of drugs involved.  As
12  discussed above, coordinated arrests and warrant searches occurred on June 30, 2015.
13  The defendant made his initial appearance in federal court on July 1, 2015, and was
14  ordered detained pending trial.

15         The defendant was charged with additional drug and firearm counts by
16  superseding indictment, namely, counts of Possession of a Firearm by a Prohibited
17  Person (undocumented alien and felon status) (Counts 10 and 11, respectively); Unlawful
18  Possession of a Silencer (Counts 12 and 13); and Possession of Controlled Substances
19  with Intent to Distribute (Count 15).  Dkt. #245 (Fourth Superseding Indictment).

20  **C.    Plea Agreement**

21         On December 19, 2016, the defendant entered guilty pleas to Conspiracy to
22  Distribute Controlled Substances, as charged in Count 1, but subject to the 21 U.S.C.
23  § 841(b)(1)(C) penalty provision, and Felon in Possession of a Firearm, as charged in
24  Count 11.  Dkt. #295 ("Plea Agreement").

25         In his Plea Agreement, the parties entered into certain stipulations, including a
26  base offense level of 30 and a 2-level increase for possession of a dangerous weapon.  *Id.*
27  at ¶ 10.  Moreover, the United States agreed not to file a 21 U.S.C. § 851 enhanced
28  penalty information based on the defendant's prior felony drug conviction and further

United States' Sentencing Memorandum
*U.S. v. Garcia-Valencia*; CR15-202JCC - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  agreed to recommend a term of incarceration of no more than sixty-six (66) months.  *Id.*

2  at ¶¶ 5, 11.  The Agreement also acknowledged that the Court is free to reject the parties'

3  recommendations, to apply additional downward or upward adjustments in determining

4  Defendant's Sentencing Guidelines range, and to impose any sentence authorized by law.

5      The Plea Agreement also contained a limited waiver of appeal.  *Id.* at ¶ 18.  The

6  United States requests that the Court advise Defendant appropriately regarding his

7  remaining appellate rights, following imposition of sentence.

8                     **III.  SENTENCING RECOMMENDATION**

9      The United States respectfully recommends the imposition of a custodial sentence

10  of ***66 months***, to be followed by three (3) years of supervised release, subject to the

11  recommended standard and special conditions.  The government submits that this

12  sentence is warranted by, and sufficient but not greater than necessary in light of, both the

13  United States Sentencing Guidelines ("USSG"), as well as the factors set forth in

14  18 U.S.C. § 3553(a) for the reasons set forth below.

15                          **IV.  DISCUSSION**

16  **A.      U.S. Sentencing Guidelines**

17      The parties concur in the Sentencing Guidelines computations set forth in the

18  USPO Recommendation Report.  Assuming that the defendant sufficiently accepts

19  responsibility at the time of sentencing, his total offense level is 29, calculated as follows:

| Base Offense Level | 30 | USSG § 2D1.1(c)(4) |
|---|---|---|
| Dangerous Weapon | +2 | USSG § 2D1.1(b)(1) |
| Acceptance | -3 | USSG § 3E1.1(a) & (b) |
| **Total Offense Level** | **29** | |

PSR ¶¶ 23-32.  As discussed above, the parties stipulated to the aforementioned base

offense level and adjustments in the parties' Plea Agreement.

    Because the defendant committed the instant offenses while serving a criminal

justice sentence (a prior drug felony), he has two criminal history points, which places

him within Criminal History Category II.  PSR ¶¶ 35-37.

United States' Sentencing Memorandum
*U.S. v. Garcia-Valencia*; CR15-202JCC - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Accordingly, Garcia-Valencia's advisory range is **97-121 months**.

2  **B.      18 U.S.C. § 3553(a) Factors**

3    As the Ninth Circuit and the Supreme Court have made clear, the sentencing

4  guidelines are "the 'starting point and the initial benchmark' . . . and are to be kept in

5  mind throughout the process." *United States v. Carty*, 520 F.3d 984, 996 (9th Cir. 2008)

6  (internal citations omitted).  Title 18, United States Code, Section 3553(a), sets forth

7  factors for the Court to consider alongside the advisory guideline range.  The United

8  States submits that the recommended sentence is appropriate particularly in light of "the

9  nature and circumstances of the offense," "the history and characteristics of the

10  defendant," and the need for the sentence "to reflect the seriousness of the offense, to

11  promote respect for the law, and to provide just punishment for the offense," and "to

12  afford adequate deterrence to criminal conduct."  18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and

13  (a)(2)(B).

14    Here, the nature and circumstances of the offense are serious, as it involves a

15  multi-state drug trafficking network distributing large quantities of dangerous narcotics,

16  particularly heroin and methamphetamine.  The Court unfortunately is all too familiar

17  with the devastating impact these drugs have on users, their families, and the surrounding

18  communities.  Indeed, as widely reported, this nation is facing an opioid epidemic, above

19  and beyond the ongoing methamphetamine crisis.  Here, as the investigation revealed, the

20  defendant knowingly contributed to this societal crisis.  The quantities involved are

21  tremendous.  As noted above, agents seized multiple kilograms of heroin and

22  methamphetamine, which merely illustrates the immense amounts of drugs distributed by

23  the larger DTO.

24    The Court must also consider the history and characteristics of the defendant.

25  Garcia-Valencia is a native of Mexico raised in modest means and with limited access to

26  education.  He reports a loving and supportive upbringing.  He has resided in the United

27  States, albeit illegally, for many years and has established significant ties.  Garcia-

28  Valencia also has a prior California felony drug conviction (cocaine) from 2002, for

United States' Sentencing Memorandum
*U.S. v. Garcia-Valencia*; CR15-202JCC - 6

1  which there remains an outstanding bench warrant.  Nevertheless, on balance, this factor

2  warrants a sentence below the advisory guidelines range.

3  In fashioning a sentence, the Court also must consider the "need to avoid

4  unwarranted sentence disparities" among "defendants with similar records who have been

5  found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Here, as noted by the

6  Probation Office and by the defense, of the sentenced co-defendants, Garcia-Valencia is

7  likely most comparable to co-defendant Efren Villalobos-Gonzalez, a redistributor and

8  stash house supervisor, who received a 60-month sentence.  The United States agrees

9  with that assessment on balance.  However, the government further believes that Garcia-

10  Valencia is slightly more culpable.  Although held responsible for a lesser drug quantity,

11  unlike Villalobos-Gonzalez, Garcia-Valencia has a prior drug felony conviction and

12  *unlawfully* possessed two firearms and an illegal silencer – which are serious and

13  aggravating factors.[1]  Hence, the United States is recommending 66 months here.

14  Finally, a sentence of some significance is necessary in order to reflect the

15  seriousness of the offense, to protect the public, to provide just punishment, and to

16  promote respect for the law.  As noted, the United States recognizes factors that weigh in

17  mitigation and agrees that a sentence below the advisory guideline range (and below the

18  otherwise applicable mandatory minimum) is appropriate under the circumstances.  It is

19  truly unfortunate that the defendant elected to turn to distributing narcotics and

20  associating with criminal organizations for personal gain.  Nevertheless, notwithstanding

21  the large quantities of drugs involved, the seized firearms and silencer unlawfully

22  possessed, and the defendant's prior felony drug conviction, the United States allowed

23  Garcia-Valencia to plead guilty to a 841(b)(1)(C) offense.  It is the United States' sincere

24  hope that this encounter with the federal criminal justice system will compel the

25  defendant to reflect upon his crimes, the damage caused to his community, and the

26

27

28  [1] As the court may recall, Villalobos-Gonzalez was not prohibited from possessing firearms.

United States' Sentencing Memorandum
*U.S. v. Garcia-Valencia*; CR15-202JCC - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  hardship he has imposed upon himself and his family, and to redirect his energies to

2  lawful and productive endeavors going forward.

3  **C.      Fines, Forfeiture, and Restitution**

4        The United States concurs in the recommendation of the Probation Office that the

5  fine be waived based on the defendant's apparent inability to pay.  However, the

6  defendant is responsible for the mandatory Special Assessment of $200.  There is no

7  restitution or forfeiture.[2]

8                              **V.  CONCLUSION**

9        For the reasons set forth herein and in the USPO Recommendation Report, the

10  United States respectfully recommends that this Court impose sentence as set forth

11  above.

12        DATED this 27th day of February, 2017.

13                                          Respectfully submitted,

14
                                            ANNETTE L. HAYES
15                                          United States Attorney

16
                                            *s/ Steven T. Masada*
17                                          STEVEN T. MASADA
                                            GRADY J. LEUPOLD
18                                          Assistant United States Attorneys
19                                          United States Attorney's Office
                                            700 Stewart Street, Suite 5220
20                                          Seattle, WA 98101
21                                          Telephone: 206-553-7970
                                            Fax: 206-553-4440
22

23

24

25

26

27  ───────────────────────

28  [2] The firearms and related items have been administratively forfeited by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

United States' Sentencing Memorandum
*U.S. v. Garcia-Valencia*; CR15-202JCC - 8

1    **CERTIFICATE OF SERVICE**

2         I hereby certify that on February 27, 2017, I electronically filed the foregoing with

3    the Clerk of the Court using the CM/ECF system which will send notification of such

4    filing to the attorney(s) of record for the defendant(s).

5

6         *s/ Alissa Harris*
     ALISSA HARRIS
7    Paralegal Specialist
8    United States Attorney's Office
     700 Stewart Street, Suite 5220
9    Seattle, Washington 98101-1271
10   Phone: (206) 553-4439
     Fax: (206) 553-4440
11   Email: Alissa.Harris@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States' Sentencing Memorandum
*U.S. v. Garcia-Valencia*; CR15-202JCC - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970